UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES COMEROTA,

                          Plaintiff,

     -against-                                                3:07-CV-0175 (LEK)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                          Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Plaintiff filed for Disability Insurance Benefits ("DIB") and Supplemental Security Income
("SSI") under the Social Security Act in February 2005.  Though Plaintiff initially alleged he became
disabled in October 2003, at his administrative hearing he amended his claim with a date of disablement
of January 10, 2005.  Tr. 283.  The claim was denied initially on April 7, 2004, and Plaintiff filed a
timely written request for a hearing on April 13, 2005.

The claimant appeared and testified at a hearing held on August 17, 2006, in Binghamton, NY.
Plaintiff and his representative appeared at the hearing before Administrative Law Judge ("ALJ") Robert
E. Gale, who considered the case *de novo* and on August 25, 2006, denied Plaintiff's applications.  Tr.
13-20.  Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council on
October 24, 2006.  Tr. 9-10, 260-69.  The ALJ's decision became the final decision of the Commissioner
when the Appeals Council denied Plaintiff's request for review on December 22, 2006.  Tr. 5-8.  This

action followed.

Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Compl. (Dkt. No. 1). Both parties have moved for judgment on the pleadings. Dkt. Nos. 10, 11. The Court appreciates the challenges and struggles Plaintiff has encountered from lower back pain, a heart condition, and feelings of anxiety and depression. However, because the Court must follow the requirements of 42 U.S.C. §§ 405(g) and 1383(c)(3) in reviewing final decisions of the Commissioner of Social Security, it finds no proper basis for reversal or remand. Therefore, for the reasons that follow, the Commissioner's determination of no disability is affirmed.

## II.   BACKGROUND

### A. Procedural History

James P. Comerota ("Plaintiff") filed the instant action for disability insurance benefits and supplemental security income benefits both on February 15, 2005. Tr. 65-67, 68-69. Both applications were denied administratively on April 7, 2005. Tr. 26-32. Plaintiff filed a timely request for a hearing on April 13, 2005. Tr. 34-35. An administrative hearing was held on January 31, 2006. Tr. 270. Following that hearing, an unfavorable decision was rendered on August 25, 2006. Tr. 11-20.

On October 24, 2006, Plaintiff filed a request for review of the hearing decision. Tr. 9-10, 260-69. The Appeals Council issued a notice of appeals council action on December 22, 2006. Tr. 5-8. The Appeals Council denied Plaintiff further Request for Review, thereby rendering the ALJ's unfavorable Decision as the final decision of the Commissioner of Social Security. Tr. 5-8.

On February 20, 2007, Plaintiff filed a Complaint in the United States District Court for the Northern District of New York. In that Complaint, Plaintiff alleges that the finding of the Commissioner of Social Security that Plaintiff is not disabled is not based upon substantial evidence and represents a

clear error of law.  Specifically, Plaintiff argues that the ALJ erroneously failed to list Plaintiff as having

a personality disorder under §12.08 of the listed impairments; failed to utilize the services of a medical

expert with respect to the claim for a disability under a listed impairment; failed to give proper weight to

the reports of Dr. Kevin Gallagher and completely ignored the reports of Dr. Kashou; and failed to

satisfy his burden at step five of the sequential evaluation process.

### B. Plaintiff's History

Plaintiff's date of birth is September 27, 1955.  Tr. 65.  Plaintiff has a high school diploma and no

other relevant specialized training.  He eventually completed his Associates Degree at Broome

Community College.  Tr. 285.  He has past relevant work as a heavy laborer at a services plumbing

company and a technical support technician for an ISP.  Tr. 284.  Plaintiff alleges disability arising out of

both physical and mental impairments including lower back problems, coronary artery disease, status

post myocardial infarction as well as anxiety and depression.

### C. Medical Records

#### 1. Heart and Back Conditions

Plaintiff initially claimed his period of disability began in October 2003.  Plaintiff has

subsequently amended his claim with a date of disablement to be January 10, 2005.  Tr. 283.  Plaintiff

has not engaged in any substantial gainful activity since January 10, 2005.  Plaintiff was treated by both

Dr. Kevin Gallagher ("Dr. Gallagher") as well as Dr. Hisham Kashou ("Dr. Kashou")  for his heart

condition.  He had treated with Dr. Gallagher for all his conditions, and Dr. Kashou specifically for his

heart condition.  Tr. 157-181, 217-232, 241-244.

Plaintiff's back was injured following a work related injury on January 9, 1995.  Tr. 127.  At that

time, Plaintiff was a plumber, and the back pain began when he was attempting to remove a water heater

from its packaging.  Tr. 127.  Initial treatment began with Dr. Robert Capecci at Orthopedic Associates.

Tr. 127.  Plaintiff has a central herniated disc at L4-5 and L5-S1.  Tr. 15.

In June 2002, Plaintiff initially experienced a myocardial infarction.  At that time, he underwent cardiac catherization and was found to have a severe lesion of the distal circumflex artery which was stented.  Tr. 135-136.  That procedure was performed by Dr. Kashou.  Tr. 136.  In June 2003, Plaintiff was re-admitted to the United Health Services Hospital.  Tr. 174.  On June 10, 2003, Plaintiff underwent another cardiac catheterization.  Tr. 176.  Thereafter, he underwent an angioplasty on June 19, 2003.  These procedures were also preformed by Dr. Kashou.  Tr. 175-76.

On June 2, 2004, Plaintiff saw his physician, Dr. Gallagher, complaining of cold sores, for which he was prescribed Acyclovir.  Tr. 217.  Plaintiff next underwent a treadmill test on July 27, 2004.  Tr. 188.  Plaintiff's resting blood pressure was 140/70, and his resting heart rate was 52.  The resting electrocardiogram ("EKG") was normal.  Tr. 188.  Plaintiff exercised for up to nine minutes.  He did not complain of any chest pain and there was no significant ST segment depression.  Tr. 188.

On June 13, 2006, a few months prior to Plaintiff's social security disability hearing, he was hospitalized.  Tr. 255.  Past medical history at that time was noted to include hypertension, dyslipidemia, coronary artery disease, and established post-angioplasty stenting.  Tr. 255.  Plaintiff presented to the emergency room complaining of weakness, dizziness, and chest discomfort.  Tr. 255.  The initial diagnosis included coronary artery syndrome, most likely inferior posterior infarction.  Tr. 259.  Plaintiff was admitted to the cardiac catheterization laboratory on an emergency basis and underwent emergent cardiac catheterization after an EKG showed ST elevatation inferiorly.  Tr. 259.  Stenting of the circumflex artery was performed again, and Plaintiff was advised to stop smoking and was told he could continue his activity gradually.  Tr. 255.

2. Mental Health Conditions

4

Plaintiff saw his doctor on April 26, 2005 and told Dr. Gallagher that he had became depressed, complained of poor sleep (3-hours per night), and reported that he no longer enjoyed activities he had previously pursued, such as martial arts and guitar. Tr. 220. Plaintiff also explained that he was in the process of applying for disability. Tr. 220. Dr. Gallagher diagnosed Plaintiff with depression and gave him samples of Lexapro. Tr. 220. Dr. Gallagher did not perform a mental status exam and based his diagnosis on Plaintiff's complaints.

On a May 26, 2005 visit to Dr. Gallagher, Plaintiff stated that his mood was "still low," he found it "hard to motivate himself to do things that he used to enjoy," and he did "not have the energy level . . . that he used to have." Tr. 224. Dr. Gallagher concluded that the Lexapro had proved ineffectual, discontinued it, and prescribed Fluoxetine instead. Tr. 224. During a June 27, 2005 visit, Plaintiff complained that he still had social isolation, poor self-esteem, sleep disturbance, and no motivation. Tr. 226. Dr. Gallagher concluded that the Fluxetine was also ineffectual and switched Plaintiff to Effexor. Tr. 226.

On a August 1, 2005 doctor's visit, Plaintiff reported to Dr. Gallagher that "he still has some difficulty sleeping, [but] thinks actually it has improved a little bit," and "[h]is concentration has improved, but he is still hard to motivate if he does not actually have to do something." Tr. 227. During a September 12, 2005 office visit, Plaintiff reported that "he thinks it [the Effexor] is helping him," and "he is slightly less depressed than he was before." Tr. 229. Plaintiff also told the doctor that he had been unable to secure a job, which made "him feel terrible," and that he attributed this inability to obtain work to prejudice by employers related to his age and health conditions.

On November 14, 2005, Plaintiff reported that "[h]e is not feeling very good, but he is not feeling bad." Dr. Gallagher further noted that Plaintiff was "able to motivate himself to get up, to go out, and to

do things." Tr. 231. At this time, Plaintiff was continued on Effexor. During a follow-up visit on February 13, 2006, Plaintiff reported that "he is not feeling dulled by his medication; however he does feel that his anxiety is at a lower level," and that he still "carries quite a degree of anger." Tr. 249. Dr. Gallagher concluded that "[o]verall, the patient is doing well," and he continued him on Effexor. Tr. 249. Plaintiff stated that "[h]e still feels somewhat anxious but feels relieved" and "[h]e feels good." Tr. 254. At that time, Plaintiff's condition was considered stable and his medication regimen was not changed. Tr. 254.

### 3. Medical Assessments

Dr. Gallagher subsequently opined, in a medical assessment submitted as part of Plaintiff's disability claim, that Plaintiff is seriously limited in his ability to follow work rules and relate to co-workers. Tr. 242. According to Dr. Gallagher, Plaintiff has poor to no ability to interact with supervisors and only a fair ability to deal with the public and use judgment. Tr. 242. Dr. Gallagher also concluded that Plaintiff has only a fair ability to maintain attention and concentration and has poor to no ability to deal with work stress. Tr. 243. Finally, Dr. Gallagher concluded that Plaintiff is seriously limited in his ability to behave in an emotionally stable manner, relate productably in social situations and demonstrate reliability. Tr. 244.

Plaintiff has been examined by Dr. Mark Henderson on March 4, 2005 on behalf of the Social Security Administration. Tr. 198-204. Plaintiff complained of lower back pain and stated he initially injured his low back in 1995. Tr. 198. Dr. Henderson also notes Plaintiff's history of hypertension and prior myocardial infarction in 2002. Tr. 198. Plaintiff told Dr. Henderson he has occasional chest pain when he is under a lot of stress. Tr. 198. Plaintiff smoked since 1973, and still smoked one to one and one-half packs of cigarettes a day. Tr. 199. Plaintiff used alcohol only occasionally, and used marijuana

6

from 1973 to 1980. Plaintiff reported that he was able to cook, clean and do laundry as well as take care of his personal needs, and to socialize with friends. Tr. 199.

Plaintiff's gait was normal and he could walk on heels and toes without difficulty. Tr. 199. He could perform a full squat and needed no help changing for the examination or mounting or dismounting the examination table. Tr. 199. The following body systems were normal on examination: skin and lymph nodes; head and face; eyes, ears, nose and throat; neck, chest and lungs; and heart. Tr. 200. Plaintiff's heart had a regular rhythm. Tr. 200. PMI was in the left fifth intercostal space at the midclavicular line. Tr. 200. There was no murmur, gallop or rub audible. Tr. 200. Plaintiff's abdomen was normal, with no hepatosplenomegaly, masses or abdominal bruits. Tr. 200.

The musculoskeletal examination showed full ranges of motion of the cervical spine, shoulders, elbows, forearms and wrists bilaterally, as well as full range of motion of the hips, knees and ankles bilaterally. Tr. 200. His strength was 5/5 in the upper and lower extremities. Tr. 200. There was no evidence of subluxations, contractures, anklyosis, or thickening. Tr. 200. The neurological examination was normal with deep tendon reflexes 2+ in the upper and lower extremities. Tr. 200. Examination of the extremities was normal. Tr. 201. Plaintiff's hand and finger dexterity was intact. Tr. 201. His grip strength was 5/5 bilaterally. Tr. 201.

Plaintiff's mental status indicated that Plaintiff dressed appropriately and maintained good eye contact. Tr. 201. He was oriented in all spheres. Tr. 201. His affect was normal, and he denied suicidal ideation. Tr. 201. X -rays of the lumbar spine showed no bony or disc space pathology. There was mild rightward splinting, but no frank scoliosis. Tr. 201. Dr. Henderson diagnosed Plaintiff with the following: 1) history of low back pain for which Plaintiff currently had mild decreased range of motion of the lumbar spinal area, but no decreased range of motion, strength, or sensory deficits in the lower

extremities which would suggest discogenic disease; 2) history of hypertension, which was well-regulated at the examination; 3) history of myocardial infarction, and history of dyslipidemia and tobacco abuse; 4) history of dyslipidemia; and 5) tobacco abuse. Tr. 202.

Dr. Henderson opined that, based upon the examination, Plaintiff would have a moderate restriction for heavy lifting and carrying, and a mild restriction for prolonged exertional activities primarily due to his previous coronary artery disease. Tr. 202. He suggested that a review of Plaintiff's cardiac stress test would help to further clarify Plaintiff's current condition. Tr. 202. A magnetic resonance imaging test ("MRI") performed on March 9, 200S showed mild displacement and compression of the left L3 nerve root. Tr. 208. At the L2-3 level there was a small left lateral disc protrusion without neural involvement; at LS-S 1 a small posterior central and right-sided disc protrusion/herniation contacting, but not displacing, the right SI nerve root was stable. Tr. 208.

In April 2005, a state agency disability analyst concluded that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk (with normal breaks) for a total of about 6 hours in an 8 hour workday, could sit for about 6 hours in an 8 hour workday, and could push and/or pull in an unlimited amount, "other than as shown for lift/carry." Tr. 213. The analyst concluded that Plaintiff has no postural limitations, no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations. Tr. 215-16. The analyst concluded that Plaintiff's "allegation of back and heart impairment is supported by the medical evidence of record, however, it does not appear to be to the degree that he alleges." Tr. 216. In this regard, the analyst noted that Plaintiff "has not seen his cardiologist since he got out of the hospital 7/04, he had not seen his orthopedic doctor since 1997 until the 3/05 visit," "[h]e does not take any pain medication for his back," "his heart/chest pain is only after high level of physical activities, and "[h]is activities do not appear to

8

be significantly limited." Tr. 216.

### D. The Hearing

An initial Administrative Hearing was held on January 31, 2006, before Administrative Law Judge Robert Gale, at which Plaintiff was present. Tr. 270-71. Ultimately, that hearing was adjourned to a later date. Tr. 276. A second Administrative Hearing was held on August 17, 2006. Tr. 277. At the second Administrative Hearing, both Plaintiff and a vocational expert, David Sypher, appeared and testified. Tr. 277-278.

Plaintiff's attorney raised an issue with respect to a medical expert on the record at the second Administrative Hearing. Tr. 282. Plaintiff's attorney argues that a medical expert had not been ordered nor utilized to determine whether Plaintiff met the Listings based on his psychological functioning. Tr. 282. The Administrative Law Judge noted at that time that he was aware that there is no consultative examination. Tr. 282.

There was also a discussion between the Administrative Law Judge and Plaintiff's attorney at the hearing regarding the date of disablement. Tr. 283. The initial alleged onset date was October 15, 2003. Tr. 283. At that time, Plaintiff's attorney clarified that they were modifying the onset date to January 2005. Tr. 283.

Plaintiff testified that he last worked for Eastern Temporary Services and was placed at the Sheltered Work Shop where he was working as a manufacturing technician. Tr. 285-286. He built cable harnesses and that employment ended on January 10, 2005. Tr. 286. Plaintiff had some rental income from one apartment and testified that when he was contacted he participated in maintenance of the apartment. Tr. 293-294. He also stated he was able to purchase his own groceries, cook his own meals, and clean his house. Tr. 303-04. Plaintiff testified that he could stand for about one hour, without

9

needing to sit. Tr. 306. He could sit for "a couple of hours at a time", and he could lift and carry 15 to 20 pounds on an occasional basis. Tr. 307.

Plaintiff testified that his main physical medical problem is that caused by his herniated disc in his back. Tr. 294-295. He stated that he cannot do a lot of physical activity. Tr. 295. He has difficulty standing and has radiating pain down the back of his legs. Tr. 295. His back is bad in the morning and sitting bothers him. Tr. 295-296. Additionally, lifting incorrectly or lifting objects which are too heavy causes discomfort and an increase in symptomatology. Tr. 296.

Plaintiff testified as to his heart condition. Tr. 296. He confirmed that he most recently had another heart attack in June 2006. His first heart attack was in June of 2002. Tr. 296. He is easily tired and has shortness of breath as results. Tr. 297. The shortness of breath and chest pain can be brought on by high levels of anxiety and/or physical activity. Tr. 297. He also has high blood pressure which is controlled by medications. Tr. 298.

Plaintiff testified that his emotional and mental problems has been more significant over the past couple of years. Tr. 298. He finds it difficult to deal with other people and authority. Tr. 298. While he has only been seen by his primary care physician, he testified that the reason for this is that he does not have insurance or money to pay for psychological treatment. Tr. 299-300. Plaintiff also stated that most of his typical days are spend at home and avoiding socialization. Tr. 300. Plaintiff also stated that he has very little structure or schedule to his day. Tr. 300. He lives alone, but his mother and brother visit on occasion. Tr. 302-303.

Plaintiff testified that he can walk for about five minutes before his back becomes stiff, and he can only stand for about an hour, although it is easier to sit. Tr. 306. He stated that his ability to lift or carry is at fifteen to twenty pounds. Tr. 309. He also said that he is able to lift twenty pounds if he

10

bends at the knees and uses his shoulder.  Tr. 309.  There has been no change with respect to his back in 2005.  Tr. 309-10.  However, in the last couple of months, he testified that he had no additional problems with regard to his back.  Tr. 310.  Any increase of activity can cause additional symptoms.  Tr. 310.

With regard to his heart, Plaintiff testified that strenuous activity can make the heart rate go up, so that he has to avoid it.  Tr. 314.  With respect to his psychological issues, Plaintiff testified that he carries a tactical knife with him.  Tr. 318.  He sleeps with a rifle next to his bed, and feels paranoid and has difficulty dealing with others, particularly in work and other stressful environments.  Tr. 318.  He is aggressive and disrespectful with people.  Tr. 310.  He believes that it affects his ability to work.  Tr. 318.

The Administrative Law Judge asked the vocational expert a hypothetical question involving a claimant with the ability to lift and carry twenty pounds occasionally and ten times frequently, and the ability to stand and walk two hours in an eight hour workday, and to sit for six hours out of an eight hour workday.  Tr. 327-328.  The vocational expert noted two possible job categories, an electronic assembler and a file clerk, that exist in significant numbers in the regional and national economy.  Tr. 328.  Lastly, the ALJ provided a second hypothetical of the ability to push and pull twenty pounds occasionally and ten pounds frequently with the ability to understand, remember and carry out simple tasks and complex tasks with supervision but in a low stress environment with occasional changes in setting and occasional interaction with co-workers and the public.  Tr. 329.  Based upon this hypothetical, the vocational expert said "I don't believe there would be any type of suitable work."  Tr. 330.

## III.  LEGAL STANDARD

### A. Standard of Review

District courts have jurisdiction to review claims contesting a final decision by the Commission of Social Security denying disability benefits. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). In reviewing any such claim, a district court may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, it must defer to the Commissioner's determination unless the correct legal standards were not applied or substantial evidence in the record does not support the determination. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). Thus, even where substantial evidence supports an ALJ's conclusion, if "there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Id. Likewise, a reviewing court should remand any case where an ALJ fails to set forth with sufficient specificity the crucial factors underlying a determination such that the court is able to decide whether that determination is supported by substantial evidence, and the case should be remanded. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984); see also Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982) (remand is appropriate where a reviewing court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required").

"Substantial evidence" requires more than a mere scintilla of evidence, yet less than a preponderance. Sanchez v. NLRB, 785 F.2d 409 (2d Cir. 1986). It has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229

(1938)). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Ryan v. Astrue, 650 F. Supp. 2d 207, 216 (N.D.N.Y. 2009).  Where evidence is susceptible to more than one rational interpretation, a court may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

A district court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand.  42 U.S.C. § 405(g).  Granting judgment on the pleadings is appropriate where the material facts are undisputed and where a court may make a judgment on the merits with reference only to the contents of the pleadings.  FED. R. CIV. P. 12(c); Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).  Remand is warranted where there are gaps in the record and further development of the evidence is needed, or where the ALJ has applied an improper legal standard. See Butts, 388 F.3d at 385; Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999); Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).  Remand is most appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted).  Additionally, remand is appropriate to allow for the consideration of additional new evidence which is material to the case and where good cause exists for the failure to submit that evidence in prior proceedings. Melkonyan v. Sullivan, 501 U.S. 89 (1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983).  By contrast, reversal and remand solely for calculation of benefits is appropriate when there

13

is "persuasive proof of disability" and further development of the record would not serve any purpose. Rosa, 168 F.3d at 83; Parker, 626 F.2d at 235; Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983).

## B. Benefits Eligibility

Under the Social Security Act, an individual is disabled if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). The Social Security Administration ("SSA") uses a five-step sequential evaluation process to determine whether a claimant over the age of 18 is disabled under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520; see also Bowen v. Yuckert, 482 U.S. 137 (1987) (upholding the validity of this evaluation process); Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 200) (citing DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998)). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the burden of proof for the first four steps, and the Commissioner bears that burden in step five. See Bowen, 482 U.S. at 146; Shaw, 221 F.3d at 132.

20 C.F.R. § 404.1520 details the SSA's five-step analysis: at step one, the ALJ considers whether the claimant is currently engaged in substantial gainful activity.[1] If the claimant is not engaged in such activity, the ALJ advances to step two of the analysis and considers whether the claimant has a severe

---

[1] 20 C.F.R. § 404.1572(a) defines "substantial work activity" as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(b) defines "gainful work activity" as "the kind of work usually done for pay or profit."

14

impairment meeting the "durational requirement"[2] and significantly limiting her physical or mental ability to perform basic work activities. In making this determination, the ALJ does not consider the claimant's age, education, or work experience. Assuming the ALJ finds the claimant has a severe impairment(s), the ALJ continues to step three and determines whether the impairment(s) meets or equals any of those listed in Appendix 1, Subpart P of Regulation No. 4 ("the Listings"). If the ALJ concludes that the claimant's impairment(s) does meet or equal one or more of the Listings, the claimant is deemed disabled. If the claimant's impairment(s) does not meet or equal one of the Listings, the fourth step of the evaluation requires the ALJ to assess whether, despite the claimant's severe impairment, the claimant's residual functional capacity ("RFC")[3] allows him to perform his past work.

If the claimant is unable to perform her past work, the fifth step in the sequential analysis is a two-part process which requires the ALJ to first assess the claimant's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that she could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler, 461 U.S. 458, 460 (1983). Where a claimant only suffers from exertional impairments, the grids are conclusive of the existence of a disability; where, however, "a claimant suffers from additional 'nonexertional' impairments, the grid rules may not be controlling." Id. at 605.

## IV.  DISCUSSION

---

[2] The impairment must either be expected to result in death or must last for, or be expected to last for, a continuous period of at least 12 months. 20 C.F.R. § 404.1509.

[3] RFC is defined as the most a claimant can do after considering the effects of all her medically determinable physical and mental limitations, including those not deemed "severe." See 20 C.F.R. § 404.1545; SSR 96-8p.

## A. The Commissioner's Decision

Following the hearings, the ALJ made the following determinations, which the Commissioner subsequently adopted as his final decision:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
(2) The claimant has engaged in substantial gainful activity since October 15, 2003, the alleged onset date (20 C.F.R. 404.1520(b) and 404.1571 *et seq*).
(3) The claimant has the following severe impairments: low back pain and coronary artery disease (20 CFR 404.1520(c)).
(4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk 6 hours in an 8-hour day and sit 6 hours in an 8-hour day. He should avoid ladders and scaffolds and perform only occasional crawling and no repetitive twisting. He should also avoid temperature extremes and humidity/wetness. He is capable of understanding, remembering, and performing simple tasks, learning new simple tasks, can work in a low stress environment defined as only occasional changes in work setting and occasional interaction with the public, coworkers and close supervision.
(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).
(7) The claimant was born on September 27, 1955 and was 49 year old on the alleged disability onset date, which is defined as a younger individual age 45-49 (20 CFR 404.1563).
(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disable", whether or not the claimant has transferable job skills
(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).
(11) The claimant has not been under a "disability," as defined in the Social Security Act, from October 15, 2003 through the date of this decision (20 CFR 404.1520(g)).

## B. Five-Step Analysis

### 1. Substantial Gainful Activity

Step one of the five-step analysis requires the ALJ to consider "whether the claimant is currently engaged in substantial gainful activity." 20 C.F.R. § 404.1520. The ALJ found that Plaintiff "has

engaged in substantial gainful activity since October 15, 2003, the alleged onset date (20 CFR 404.1520(b)) and 404.1571 *et seq*." R. 15. The ALJ found that although Plaintiff's first job in January 2004 could be an unsuccessful work attempt, the second two jobs did not end because "he could not perform due to symptoms or worsening of medical conditions," and thus cannot be classified as unsuccessful work attempts and must be classified as substantial gainful activity. As a consequence, the ALJ found that Plaintiff last worked in January 2005, which is the same month Plaintiff now claims as his date of disablement. Plaintiff's Brief ("Pl. Br.") at 4.

### 2. Severity of Impairment

If a claimant is not engaged in substantial gainful activity, the ALJ must next consider whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520. The ALJ determined that Plaintiff had the following impairments considered "severe" under the Act: low back pain and coronary artery disease (20 CFR 404.1520(c)). Tr. 18. This conclusion is not disputed.

### 3. Listed Impairment

If the claimant is not performing substantial gainful work and has a "severe impairment," the third inquiry is whether, based solely on the medical evidence, the claimant has an impairment which is listed in the Listings. 20 C.F.R. § 404.1520. The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in the Listings. Tr. 17. Plaintiff disputes this conclusion. Pl. Br. at 10-12.

### 4. Past Relevant Work

If the plaintiff's impairment does not correspond to one on the Listings, the fourth step is to inquire whether, despite the plaintiff's severe impairment, he has the RFC to perform his past work. 20

C.F.R. § 404.1520.  The ALJ found that Plaintiff has the RFC "to lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk 6 hours in an 8-hour day and sit 6 hours in an 8-hour day," "should avoid ladders and scaffolds and perform only occasional crawling and no repetitive twisting," avoid temperature extremes and humidity/wetness," is "capable of understanding, remembering and performing simple tasks, learning new simple tasks, can work in a low stress environment, define as only occasional changes in work setting and occasional interaction with the public, coworkers and close supervision."  R. 17.  The ALJ concluded that, in light of Plaintiff's RFC, Plaintiff "is unable to perform any past relevant work (20 CFR 404.1565)."

### 5. Ability to Perform Work That Exists in the National Economy

Once Plaintiff has established that he cannot perform his past relevant work, under the final step in the sequential analysis, the burden shifts to the SSA to demonstrate that other work exists in significant numbers in the national economy that accommodates Plaintiff's RFC.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  This final step of the five-part inquiry is, itself, divided into two phases.  First, the ALJ must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the ALJ must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g), 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

In completing the first part of the inquiry, the ALJ found that Plaintiff is a "younger individual age 45-49" under 20 C.F.R. 404.1563, that Plaintiff "has at least a high school education and is able to communicate," and that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not

disabled, whether or not the claimant has transferable job skills." Tr. 18-19.  For the second part of the inquiry, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in the national economy that the claimant can perform." Tr. 19.

### C. Plaintiff's Objections to the ALJ's Decision

Plaintiff argues that reversal or, in the alternative, remand is appropriate because, in reaching the determination that Plaintiff is not "disabled" under the Act, the ALJ erroneously failed to conclude Plaintiff has a personality disorder under § 12.08 of the Listings; failed to utilize the services of a medical expert; failed to give proper weight to the reports of Dr. Gallagher and Dr. Kashou.  Pl. Br. Plaintiff alleges these errors resulted in the ALJ's unsupported and wrongful determination that Plaintiff is capable of performing work that exists in the national economy and is not "disabled."

### 1. The ALJ Did Not Erroneously Fail to Give Proper Weight to the Reports of Dr. Kevin Gallagher or Dr. Kashou

Plaintiff challenges the ALJ's decision to assign little weight to the opinion of one of Plaintiff's treating physicians, Dr. Gallagher, and to give Dr. Kashou's opinion "significant weight," which are decisions that may impact determinations of medical severity in step two and three, and determinations of RFC in step four.  Plaintiff argues that the ALJ did not give proper weight to the extremely restrictive opinion of Dr. Gallagher, a general physician, as to Plaintiff's abilities to do work-related mental activities. Pl. Br. at 13-15; see Tr. 242-44.  The ALJ concluded that there was an absence of medical findings to support Dr. Gallagher's opinion, and therefore decided to accord it little weight.  Tr. 18-19.

Under the Commissioner's regulations, the opinion of a treating source on the nature and severity of a claimant's impairment is given controlling weight if it is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20

C.F.R. §§ 404.1527(d), 416.927(d); see Schisler v. Sullivan, 3 F.3d 563 (2d Cir. 1993). See also, SSR

96-2p (controlling weight may not be given to a treating source's medical opinion if it is not well-

supported by medically acceptable clinical and laboratory diagnostic techniques and it is "not

inconsistent" with the other substantial evidence in the case record).  However, if the opinion of the

treating sources is not well supported or consistent with other evidence, the Commissioner must consider

several factors, such as the length of the treatment relationship and the specialization of the treating

source, in order to decide how much weight to give the opinion.  20 C.F.R. § 404.1527(d)(2)-(6).

     In this case, the treating source's notes indicate that there was no mental status examination

performed, and that the entire basis for the diagnosis of depression was Plaintiff's subjective complaints.

See Tr. 217-40.  Indeed, the evaluation of a mental impairment requires that "[t]here must be evidence

from an acceptable medical source showing that [the individual has] a medically determinable

impairment." See §§ 404.1508, 404.1513." 20 C.FR. Part 404, Subpt. P, App. 1, Sec. 12.00.D.

("Documentation").  The Commissioner found that the record is devoid of such evidence here.

     The Commissioner and the ALJ concluded that Dr. Gallagher's assessment is not based upon any

medical documentation whatsoever, see 20 C.FR. § 404.1508, and therefore decided to accord it little

weight.  Tr. 14.  As set forth in SSR 96-2p, "[a] case cannot be decided in reliance on a medical opinion

without some reasonable support for the opinion."  Additionally, SSR 96-2p states that "[i]t is error to

give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-

supported by medically acceptable clinical and laboratory diagnostic techniques . . . ."

     It is within the province of the ALJ to credit or reject various portions of the treating physician's

opinion, based upon substantial evidence in the record, as the ALJ did here.  Veino v. Barnhart, 312 F.3d

578, 588 (2d Cir. 2002). Dr. Henderson, the consultative physician, noted in assessing Plaintiff's mental status that Plaintiff dressed appropriately, maintained good eye contact, and was oriented in all spheres. Tr. 201. His affect was normal, he denied suicidal ideation, and he did not assert any medical complaints to Dr. Henderson. Tr. 201.

Dr. Gallagher's restrictive assessment was also inconsistent with Dr. Gallagher's own treatment notes, which contain Plaintiff's statements to Dr. Gallagher regarding his depression and anxiety, and Dr. Gallagher's conclusions regarding Plaintiff's condition. Beginning in February 2006, Plaintiff reported an improvement in his mental symptoms that he and Dr. Gallagher attributed to his medication regimen. Tr. 249. At that time, Dr. Gallagher concluded that "Overall, the patient is doing well," and he continued him on Effexor. Tr. 249.

Later, on June 12, 2006, Plaintiff stated that overall he was doing well with his anxiety and he felt good. Tr. 254. Plaintiff stated that "[h]e still feels somewhat anxious but feels relieved" and "[h]e feels good." Tr. 254. At that time, Plaintiff's condition was considered stable and his medication regimen was not changed. Tr. 254. These treatment notes indicate that Plaintiff's treatment with medication met with substantial success, and it appears to contradict Dr. Gallagher's opinion regarding Plaintiff's mental health restrictions. Dr. Gallagher's restrictive assessment was also inconsistent with Plaintiff's testimony, during which he stated that he performed maintenance for tenants, he was able to maintain records and tax preparation for his rental unit, and he was able to purchase his own groceries, cook his own meals, and clean his house. Tr. 303-04.

Once the ALJ concluded that Dr. Gallagher's assessment was not supported by the record, he decided, pursuant to 20 C.F.R. § 404.1527(d)(2)-(6), to accord it little weight given that Dr. Gallagher is not a specialist in mental illness, his decision is not supported by his own treatment notes or a mental

21

status exam, and his opinion is inconsistent with the record.  Tr. 17-18.  The Court finds that the ALJ's

decision to accord Dr. Gallagher's restrictive assessment little weight was based upon substantial

evidence.

Plaintiff also incorrectly asserts that the ALJ did not refer to the reports of Dr. Kashou.

Pl. Br. at 13.  The ALJ in fact gave significant weight to the assessment of Dr. Kashou.

See Tr. 18; Tr. 163.  Dr. Kashou stated that Plaintiff was fine from a cardiac standpoint and

"should be able to work in any position."  See Tr. 163.  Moreover, the ALJ considered that in

June 2006, Plaintiff underwent cardiac catheterization and Dr. Kashou successfully performed

stenting of the circumflex artery.  Tr. 17; Tr. 225-26.  The ALJ noted that Plaintiff was advised to

stop smoking again at that time.  Tr. 17.  When Plaintiff was discharged after this procedure, he

was merely told to gradually increase his activities.  Tr. 256.  Thus, Plaintiff's assertion that the

ALJ ignored this evidence is not accurate.

Additionally, Plaintiff testified at the hearing (during which he referred to the 2006 stenting

procedure), that he could stand for an hour at a time, sit for several hours, and could lift fifteen to

twenty pounds.  Tr. 306, 307.  Accordingly, the ALJ concluded that Plaintiff admitted that he could

perform the exertional requirements of light work.  Tr. 19.

The ALJ has the discretion to weigh all opinion evidence, including inconsistent evidence, and to

render a disability determination based on the totally of the evidence of record.  20 C.F.R. § 404.1527(c);

Richardson v. Perales, 402 U.S. 389, 399 (1971).  When, as in the case at bar, the ALJ has exercised his

discretion and evaluated Plaintiff's credibility, this Court may not reweigh the evidence and substitute its

views for those of the ALJ.  42 U.S.C. § 405(g); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

**2.  The ALJ's Failure to List Plaintiff as Having a Personality Disorder Under §**

### 12.08 Does Not Serve as a Basis for Reversal or Remand

Plaintiff challenges the ALJ's conclusion in step three of the sequential evaluation process that he does not have an impairment that met or medically equaled one found in the Listings. Tr. 17. Plaintiff argues that he has a mental impairment in the form of a personality disorder that meets the severity of the Listings set forth at 20 C.F.R. Part 404, Subpart P, App. 1, Sec. 12.08. Pl. Br. at 10-12. However, beyond his subjective complaints to medical professionals, Plaintiff does not furnish any evidence that could support a determination that he meets the Listing for a personality disorder.

The Court begins by noting that it does not have jurisdiction to engage in *de novo* review of the Commissioner's determination, 42 U.S.C. § 405(g), and must defer to that determination unless the correct legal standards were not applied or substantial evidence in the record does not support the determination. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). In reviewing Plaintiff's first argument for reversal or remand, this Court is therefore not permitted to determine *de novo* that Plaintiff has a personality disorder under the Listings. Instead, this Court must determine whether the ALJ followed correct legal standards and had substantial evidence to support his conclusion that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. Although the ALJ is not required to record all aspects of his analysis, a reviewing court must be able to determine whether the ALJ's decision is supported by substantial evidence. See Berry, 675 F.2d 464, 469 (2d Cir. 1982); see also Ferraris, 728 F.2d 582, 584 (finding that the ALJ must set forth "the crucial factors in any determination . . . with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence").

The Court also notes that the burden of proof at step three remains with the plaintiff. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ obtained Dr. Gallagher's treating notes and, after

23

reviewing them and the other evidence in the record, found that Plaintiff does not meet the Listings. Tr. 14. While Section 12.08 of the Listings refers to personality disorder, Plaintiff's treating physician, Dr. Gallagher, actually indicated that Plaintiff had depression and some anxiety. In his Brief, Plaintiff does not assert that he meets the Listing for depression or anxiety. See 20 C.F.R. Part 404, Subpt. P, App. 1, Sec. 12.04 or 12.06; Pl. Br.

Plaintiff asserts that the ALJ's statement is conclusory, yet points to no medical evidence in the record to establish that his impairment meets the severity of a listed impairment. See Pl. Br. at 10-12. Dr. Gallagher's notes indicate that Plaintiff reported difficulties with depression, social isolation, poor self-esteem, sleep disturbance, and no motivation. However, subjective symptomology and/or complaints alone cannot be the basis for a finding of disability. 42 U.S.C. § 423(d)(1)(A) (requiring a medically determinable impairment as the cause of disability). Nor does the fact that the ALJ did not provide an express rationale for why Plaintiff does not meet the Listing for a personal disorder provide a basis of reversal or remand. See Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982) (holding that absence of an express rationale does not prevent Court from upholding the ALJ's decision regarding plaintiff's claimed listed impairments where the evidence before ALJ indicates that the decision was supported by substantial evidence.)

The Court also notes that a mere diagnosis does not serve to determine disability. Plaintiff must present evidence that establishes that the medical findings demonstrate the existence of the specific impairment list in Appendix 1. Williams ex rel. Williams, 859 F.2d 255, 259-60 (2d Cir. 1988). As discussed above, Plaintiff refers to almost no medical findings, relying entirely on Plaintiff's subjective statements and complaints. Pl. Br. 10-12. The only medical documentation that arguably supports such a finding is Dr. Gallagher's assessment, though Dr. Gallagher did not diagnose Plaintiff with a

personality disorder.  In his decision, the ALJ noted that "Dr. Gallagher opined that the claimant had poor to no ability to interact with supervisors and deal with work stresses, had seriously limited ability to follow work rules, relate to coworkers, behave in an emotional stable manner, relate predictably in social situations and demonstration reliability and fair ability to deal with the public, use judgment and maintain attention and concentration and understand, remember and carry out complex, detailed and simply job instructions".  R. 18.

However, the ALJ found it significant that "Dr. Gallagher is not a psychiatrist or psychologist," and "has never performed a mental status examination to support the above assessment." R. 18. Additionally, the ALJ found that other evidence in the record contradicted Plaintiff's and Dr. Gallagher's contentions that Plaintiff suffers from a medically determinable impairment.  For instance, the ALJ noted that "[a]t the hearing, the claimant testified that he does housekeeping, meal preparation, mowing the lawn, simple maintenance of a duplex house with a rental apartment and is able to maintain records and tax preparation for his rental unit." R. 18.  The ALJ found that "[t]he above activities are inconsistent with his allegations and testimony of . . . depression/anxiety." R. 18.

In order to show that an impairment matches a Listing, "it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990)( emphasis in the original).  Section 12.08 requires a claimant to have:

> "deeply ingrained, maladaptive behavior associated with one of the following": "Seclusiveness or autistic thinking; or . . . Pathologically inappropriate suspiciousness or hostility; or . . . Oddities of thought, perception, speech and behavior; or . . . Persistent disturbances of mood or affect; or . . . Pathological dependence, passivity, or aggressivity; or . . . Intense and unstable interpersonal relationships and impulsive and damaging behavior."  This behavior must result "in at least two of the following: "Marked restriction of activities of daily living; or . . . Marked difficulties in maintaining social functioning; or . . . Marked difficulties in maintaining concentration, persistence, or pace; or . . . Repeated episodes of decompensation, each of extended duration." 20 C.F.R. Part 404, Subpart P, App. 1, Sec. 12.08.

There is no evidence or indication in the record, beyond Plaintiff's subjective complaints, that he meets the criteria for such a Listing. Additionally, the evidence in the record which indicates that Plaintiff's symptoms of depression and anxiety have stabilized, that he does housekeeping and prepares meals by himself, mows his lawn, interacts with tenants, engages in maintenance of his house with a rental apartment, and maintains records and tax preparation, would tend to undermine marked restrictions/difficulties in daily living, or social functioning, and difficulties with maintaining concentration, persistence, or pace. Plaintiff therefore did not supply any documentation that could serve to indicate that his condition met this listed impairment, and in fact, there was evidence in the record that indicated Plaintiff's condition did not meet a listed impairment. The Court finds that Plaintiff's contention that the ALJ should have concluded he meets the Listing for a personality disorder does not serve as a basis for reversal or remand.

### 3. The ALJ Was Not Required to Utilize the Services of a Medical Expert with Respect to the Claim for a Disability Under a Listed Impairment

Plaintiff also argues that, in completing step three, the ALJ was required to contact a medical expert to evaluate whether he had a listed impairment. Pl. Br. at 12-13. The Court finds that this argument is without merit. The Commissioner's regulations provide that "ALJs *may* also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether you impairment(s) equals the requirements of any impairment listed in appendix 1 to [Subpt. P]." 20 C.F.R. § 404.1527(t)(iii). The use of the word "may" indicates that whether to utilize the services of a medical expert is within the ALJ's discretion. See Jakubowski v. Comm'r Soc. Sec., 215 Fed. Appx. 104, 107 (3d Cir. 2007); Kruchek v. Barnhart, 125 Fed. Appx. 825, 827 (9th Cir. 2005).

The cases cited by Plaintiff are inapposite. Pl. Br. at 12; Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1982), Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). These cases stand for the proposition that the ALJ has an affirmative duty, in certain circumstances where clinical findings are inadequate, to seek "additional information from [the treating physician] *sua sponte*." Clark at 118 (quotation omitted); see also Perez at 47-48. They do not stand for the proposition that the ALJ is required to bring in a medical expert to further develop the record even when the ALJ concludes there is enough evidence to decide a claimant's case. As discussed above, the ALJ concluded based upon substantial evidence that Plaintiff does not have any impairment that meets Listing level severity, and according to Social Security regulations and existing case law, he did not have a duty to bring in a medical expert to further develop the record.

### 4. The ALJ Did not Erroneously Conclude that the Commissioner Sustained his Burden at Step Five of the Sequential Evaluation Process

Plaintiff argues that the ALJ erroneously concluded that the Commissioner sustained his burden at step five of the sequential evaluation process. Tr. 16. In determining Plaintiff's RFC, the ALJ found that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently, stand or walk for six hours in an eight-hour day, and sit for six hours in an eight-hour day. Tr. 17. Further, the ALJ found that Plaintiff should avoid ladders, scaffolds, and perform only occasional crawling and no repetitive twisting. Tr. 17. He also found that Plaintiff was capable of performing simple tasks, and could tolerate occasional changes in a work setting and occasional interactions with the public and co-workers, and close supervision. Tr. 17.

The ALJ therefore concluded that Plaintiff could not perform his past relevant work as an internet manager and plumber, since that job exceeded Plaintiff's RFC. Tr. 18. Therefore, the ALJ

continued the evaluation at step five of the sequential evaluation process. The ALJ considered Plaintiff's age, education, and work experience--vocational factors which impact on his ability to perform other work in the national economy. 20 C.F.R. §§ 404.1563 to 404.1565. Using the Medical-Vocational Rules 202.13 and 202.20 as a framework for decision-making, the ALJ determined that Plaintiff was not disabled. However, the ALJ utilized the services of a VE to determine whether other jobs existed in significant numbers that Plaintiff could perform given his age, education and RFC. 20 C.F.R. § 404.1520(g).

The ALJ found, with the assistance of testimony from vocational expert David Sypher, that although Plaintiff was unable to perform his past relevant work, there were a significant number of jobs in the national economy that Plaintiff could perform which were consistent with his residual functional capacity and vocational profile. Tr. 17. The ALJ provided Mr. Sypher with a hypothetical in which an individual "[c]an lift and carry 20 pounds occasionally and 10 pounds frequently," "[c]an stand and walk two out of an eight hour period," "[s]it six out of an eight hour period," "push and pull 20 pounds occassionally, 10 pounds frequently," "can understand, remember, and carry out simple tasks and many complex tasks both with supervision and independently . . . [b]ut should work in a low stress environmental defined as only occasional changes in the work setting and only occasional interaction with co-workers and the public." Mr. Sypher identified two jobs which existed in significant numbers in the national economy. Tr. 328.

Plaintiff, relying upon the statements of Dr. Gallagher, argues that the ALJ relied on an improper hypothetical question. Pl. Br. at 17. However, as the Court explained above, the ALJ applied the appropriate legal standards in evaluating and weighing Dr. Gallagher's opinion, and there is substantial evidence in the record to support the ALJ's conclusions regarding Plaintiff's RFC.

28

Accordingly, the ALJ was not required to rely upon a hypothetical based upon the unsupported assessment of Dr. Gallagher, to which the ALJ assigned little weight. See Fernandez v. Astrue, Case No. 1:06-CV-00479, 2009 U.S. Dist. LEXIS 29412 (N.D.N.Y. April 7, 2009), Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983) (holding that because there was substantial evidence to support the Secretary's conclusion regarding plaintiff's RFC, the ALJ was not required to rely upon a hypothetical that contained limitations that the ALJ found that Plaintiff did not have.)

After thoroughly evaluating the evidence of record, the Commissioner determined that Plaintiff failed to sustain his burden of proof that he was under a disability within the meaning of the Act. The Court affirms that decision under the substantial evidence rule. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389 (1971).


V.      **CONCLUSION**

Accordingly, it is hereby

**ORDERED**, that Plaintiff's Motion for judgment on the pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for judgment on the pleadings is **GRANTED**; and it is further

**ORDERED**, that the Commissioner's determination of no disability is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED: March 16 , 2011
        Albany, New York

Lawrence E. Kahn
U.S. District Judge

29